UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-cr-20417-Altonaga/Reid

18 U.S.C. § 371
18 U.S.C. § 981(a)(1)(C)

UNITED STATES OF AMERICA

v.

EMILIO SANTANDREU,

Defendant.
_____/

FILED BY _____ D.C.

SEP 23 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

## INFORMATION

The United States Attorney charges that at all times material to this Information, unless otherwise specified:

## BACKGROUND

1. Defendant **EMILIO SANTANDREU,** a resident of Miami-Dade County, Florida, is the owner and chief executive officer of Our Microlending, a Miami-based microfinance institution.

2. Nodus International Bank ("Nodus" or the "Bank") is an International Banking Entity organized under the laws of Puerto Rico. It is regulated by the Puerto Rican Office of the Commissioner of Financial Institutions (Spanish acronym "OCIF") and began operations on or about February 22, 2010.

3. Juan Francisco Ramirez ("Ramirez) was a co-owner of Nodus and served as the chairman of the Bank's board of directors.

4. Tomas Niembro Concha ("Niembro") was a co-owner of Nodus and served as the Bank's president and chief executive officer and a member of the board of directors.

## COUNT 1
### Conspiracy To Commit Wire Fraud
### (18 U.S.C. § 371)

5. Paragraphs 1 through 4 of the Background section of this Information are re-alleged and incorporated by reference as though fully set forth herein.

6. From in or around August 2017 through in or around October 2023, the exact dates being unknown to the Government, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**EMILIO SANTANDREU,**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate, and agree with others known and unknown to the United States Attorney, to commit an offense against the United States of America, that is knowingly and with intent to defraud devise and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and, for the purpose of executing the scheme and artifice, knowingly transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

### Purpose of the Conspiracy

7. The purpose of the conspiracy was for **EMILIO SANTANDREU** and his co-conspirators Niembro and Ramirez to unjustly enrich themselves by obtaining money from Nodus through complex fraudulent schemes, including by making or causing material misrepresentations to the Bank's board of directors, officers, and OCIF regarding the true nature of these transactions.

## Manner and Means of the Conspiracy

8. The manner and means by which **EMILIO SANTANDREU** and his co-conspirators Ramirez and Niembro sought to accomplish the object and purpose of the conspiracy included, among others, the following:

9. **EMILIO SANTANDREU** and his co-conspirators designed and engaged in fraudulent schemes to obtain money from Nodus by concealing from Nodus's Board members and executives that certain investments and other transactions were for the benefit of Ramirez and Niembro, in violation of Nodus policy and Puerto Rican legal and regulatory requirements regarding insider transactions. To execute the scheme, **EMILIO SANTANDREU** helped Niembro and Ramirez obtain Nodus funds for their ultimate benefit through sham transactions with Our Microlending. The scheme entailed the following:

10. **EMILIO SANTANDREU** agreed with his co-conspirators (including Niembro and Ramirez) to cause Nodus to buy certificates of investment from Our Microlending. These investment products yielded fixed interest rate payments. **EMILIO SANTANDREU**, Niembro, and Ramirez arranged for Nodus to purchase these investments so that Our Microlending could then use the funds received from Nodus to issue personal loans to Niembro and Ramirez.

11. To cause Nodus to make these investments, **EMILIO SANTANDREU**, Niembro, and Ramirez misrepresented the nature of the investments to multiple parties on multiple occasions, omitting any mention that Nodus' investments in Our Microlending were, in reality, personal loans to Niembro and Ramirez. First, Niembro and Ramirez did not disclose the truth about the investment certificates in unanimous Board of Directors' resolutions approving the initial purchases and renewals of the certificates, depriving at least one board member of material information critical to the authorization of such investments. Second, **EMILIO SANTANDREU**, Niembro, and Ramirez did not disclose the true purpose of the investment certificates to Nodus's

Comptroller, who was responsible for safeguarding Nodus's assets and making legally required disclosures to OCIF. Third, Niembro and Ramirez did not disclose the reality behind the investment certificates to OCIF, which strictly prohibited International Banking Entities from granting loans to shareholders without OCIF's authorization.

12.     **EMILIO SANTANDREU**, Niembro, and Ramirez knew of their plan's illegal purpose and willingly participated in it, using secrecy to advance the plan and to avoid scrutiny that would threaten or impede their illegal scheme to obtain Nodus funds by fraud.

13.     As a result of this scheme and the misrepresentations of **EMILIO SANTANDREU** and his co-conspirators, Nodus approved the initial purchase of four investment certificates as well as their subsequent renewals between about August 2017 and about October 2023.

14.     In furtherance of the scheme, **EMILIO SANTANDREU**, Niembro, and Ramirez caused Nodus to complete the purchase of these investment certificates by sending funds via interstate wire transfers from Nodus to Our Microlending, and **EMILIO SANTANDREU** directed Our Microlending to loan and wire these funds to Niembro and Ramirez, or to third-party accounts designated by Niembro and Ramirez.

15.     **EMILIO SANTANDREU** benefited from his participation in the scheme as follows: (i) Our Microlending received a 1% commission based on the total funds loaned by Our Microlending to Ramirez and Niembro; (ii) Our Microlending charged a higher interest rate to Ramirez and Niembro on their personal loans than the interest rate that Our Microlending had to pay Nodus on the investment certificates—the difference in the interest rates represented Our Microlending's cut; and (iii) Our Microlending used a portion of the funds received from Nodus through the fraudulent scheme to finance loans to its traditional borrowers, who paid a standard 18% interest rate.

4

16. In total, **EMILIO SANTANDREU**, Niembro, and Ramirez fraudulently obtained approximately $11.2 million from Nodus through the fraudulent scheme with Our Microlending.

### Overt Acts

In furtherance of the conspiracy, and to accomplish its purpose and objects, **EMILIO SANTANDREU** and his co-conspirators committed and caused to be committed, in the Southern District of Florida, and elsewhere, at least one of the following overt acts, among others:

17. On or about August 16, 2017, Ramirez and Niembro caused Nodus to wire approximately $2.5 million from a Nodus account in New York to Our Microlending's account in the Southern District of Florida.

18. On or about August 16, 2017, at Ramirez's request, **EMILIO SANTANDREU** caused Our Microlending to wire approximately $2,050,000 from Our Microlending's account in the Southern District of Florida to an account at a bank in Switzerland held by an associate of Ramirez.

19. On or about November 28, 2018, Ramirez and Niembro caused Nodus to wire approximately $1.7 million from a Nodus account in New York to Our Microlending's account in the Southern District of Florida.

20. On or about November 29, 2018, **EMILIO SANTANDREU** caused Our Microlending to wire approximately $1,386,000 from Our Microlending's account in the Southern District of Florida, to an account belonging to Niembro in the Southern District of Florida.

21. On or about and between April 12 and April 13, 2022, Ramirez and Niembro caused Nodus to wire approximately $7 million from a Nodus account in New York to Our Microlending's account in the Southern District of Florida.

22. On or about and between April 12 and April 13, 2022, **EMILIO SANTANDREU** caused Our Microlending to wire, from an account in the Southern District of Florida,

approximately $3,685,760 to an account for the benefit of Niembro in the Southern District of Florida and approximately $2,714,240 to an account in the Southern District of Florida for the benefit of Ramirez.

All in violation of Title 18, United States Code, Section 371.

## FORFEITURE ALLEGATIONS

23. The allegations of this Information are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging criminal forfeiture to the United States of America of certain property in which the defendant, **EMILIO SANTANDREU**, has an interest.

24. Upon conviction of a violation of Title 18, United States Code, Section 371, a conspiracy to violate Title 18, United States Code, Section 1343, as alleged in this Information, the defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such offense, pursuant to Title 18, United States Code, Section 981(a)(1)(C).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 28, United States Code, Section 2461(c).

*For* JASON A. REDING QUIÑONES
BRUCE O. BROWN
UNITED STATES ATTORNEY

FELIPE PLECHAC-DIAZ
ASSISTANT UNITED STATES ATTORNEY

MARGARET A. MOESER, CHIEF
CRIMINAL DIVISION, MONEY LAUNDERING
AND ASSET RECOVERY SECTION
U.S. DEPARTMENT OF JUSTICE

JAVIER URBINA
SAMIR PAUL
TRIAL ATTORNEYS

7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

CASE NO.: 25-cr-20417-Altonaga/Reid

v.

EMILIO SANTANDREU,

_____/
Defendant.

**CERTIFICATE OF TRIAL ATTORNEY**

**Superseding Case Information:**
New Defendant(s) (Yes or No) _____
Number of New Defendants _____
Total number of new counts _____

**Court Division** (select one)
☑ Miami   ☐ Key West   ☐ FTP
☐ FTL     ☐ WPB

I do hereby certify that:

1. I have carefully considered the allegations of the Indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.
2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, 28 U.S.C. §3161.
3. Interpreter: (Yes or No) Yes
   List language and/or dialect: Spanish
4. This case will take __0__ days for the parties to try.
5. Please check appropriate category and type of offense listed below:

   (Check only one)
   I   ☑ 0 to 5 days
   II  ☐ 6 to 10 days
   III ☐ 11 to 20 days
   IV  ☐ 21 to 60 days
   V   ☐ 61 days and over

   (Check only one)
   ☐ Petty
   ☐ Minor
   ☐ Misdemeanor
   ☑ Felony

6. Has this case been previously filed in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____
7. Has a complaint been filed in this matter? (Yes or No) No
   If yes, Judge _____ Magistrate Case No. _____
8. Does this case relate to a previously filed matter in this District Court? (Yes or No) Yes
   If yes, Judge Jose E. Martinez   Case No. 25-20384
9. Defendant(s) in federal custody as of N/A
10. Defendant(s) in state custody as of N/A
11. Rule 20 from the _____ District of _____
12. Is this a potential death penalty case? (Yes or No) No
13. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)? (Yes or No) No
14. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No
15. Did this matter involve the participation of or consultation with Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? No
16. Did this matter involve the participation of or consultation with Magistrate Judge Ellen F. D'Angelo during her tenure at the U.S. Attorney's Office, which concluded on October 7, 2024? No

By: _____
FELIPE PLECHAC-DIAZ
Assistant United States Attorney
FL Bar No.        0105483

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name**: EMILIO SANTANDREU

**Case No**: _____

Count(s) #:1

CONSPIRACY TO COMMIT WIRE FRAUD

18 U.S.C. § 371

* Max. Term of Imprisonment: 5 years
* Mandatory Min. Term of Imprisonment (if applicable): N/A
* Max. Supervised Release: 3 years
* Max. Fine: $250,000 or twice the gross amount of any pecuniary gain or loss

*Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | Case No. 25-cr-20417-Altonaga/Reid |
| EMILIO SANTANDREU, | ) | |
| | ) | |
| *Defendant* | ) | |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

_____
*Printed name of defendant's attorney*

_____
*Judge's signature*

_____
*Judge's printed name and title*